## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**LAKEWOOD INVESTMENT GROUP**          *
**LIMITED PARTNERSHIP**
2431 Solomons Island Road, Suite 302    *
Annapolis, MD 21401
                                        *

      **Plaintiff,**                      *

  **v.**                                   *

                                        *     Civil Action No.
**MARY T. JACOBSEN**
6451 Brooks Lane                        *
Bethesda, MD 20816
                                        *
and
                                        *
**EDWIN F. JACOBSEN**
40862 Robin Circle                      *
Leesburg, VA 20175
                                        *
and
                                        *
**ELIZABETH A. DEMARR**
2504 Moon Drive                         *
Falls Church, VA 22044
                                        *
and
                                        *
**CAROLYN J. PETSCHE**
2224 Springwood Drive, #102B            *
Reston, VA 20191
                                        *
and
                                        *
**THOMAS P. VOITH**
1000 Taney Ave.                         *
Frederick. MD 21702
                                        *
and
                                        *
**NANCY E. VOITH RICE**
1749 St Tropez Court                    *
Kissimmee, FL 34744
                                        *

and                                              *

**GARY M. VOITH**                                *
2300 Diana Dr., Apt 401
Hallandale Beach, FL 33009                       *

and                                              *

**ELAINE F. WINCH**                              *
702 Pumphrey Ave
Rockville, MD 20851                              *

and                                              *

**PAUL I. JACOBSEN**                             *
5600 Foundation St
Williamsburg, VA 23188                           *

and                                              *

**DIANA L. GEREMIA**                             *
14380 Richards Run Lane
Purcellville, VA 20132                           *

and                                              *

**INGRID I. JACOBSEN**                           *
10630 Montrose Ave., Apt #1
Bethesda, MD 20814                               *

                **Defendants.**                  *


*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT FOR INTERPLEADER

Lakewood Investment Group Limited Partnership, by its counsel, and for its Complaint for Interpleader under 28 U.S.C. § 1335 against Defendants, Mary T. Jacobsen, Edwin F. Jacobsen, Elizabeth A. DeMarr, Carolyn J. Petsche, Thomas P. Voith, Nancy E. Voith Rice, Gary M. Voith, Elaine F. Winch, Paul I. Jacobsen, Diana L. Geremia, and Ingrid I. Jacobsen, states as follows:

## NATURE OF THE CASE

1.      This is a statutory interpleader action being brought under 28 U.S.C. § 1335 relating to a 10.6124% ownership interest in Lakewood Investment Group Limited Partnership ("Lakewood" or "Plaintiff"), which ownership interest formerly belonged to Mary E. "Betty" Jacobsen ("Betty Jacobsen"), who is deceased.  The 10.6124% ownership interest in Lakewood formerly belonging to Betty Jacobsen is hereinafter referred to as "Betty Jacobsen's Interest."

2.      Disputes have arisen among the Defendants, who are all children or stepchildren of Betty Jacobsen, as to which of the Defendants are entitled to ownership of Betty Jacobsen's Interest and, accordingly, the distributions from Lakewood as a result of such ownership.  Some of the Defendants have asserted conflicting claims to ownership of Betty Jacobsen's Interest, and other Defendants have potential claims to ownership of Betty Jacobsen's Interest that would be in conflict with claims already asserted.

3.      The conflicting claims (already asserted and potentially to be asserted) by the Defendants arise out of private matters among Betty Jacobsen's children and stepchildren that are separate from Lakewood's business, and for which Lakewood does not have a sufficient basis to determine who has rightful claims to Betty Jacobsen's Interest.

## PARTIES

4.      Plaintiff is a Maryland limited partnership with a principal office in Anne Arundel County, Maryland.

5.      Defendant Mary T. Jacobsen ("Terri Jacobsen") is an individual domiciled in Montgomery County, Maryland, and thus is a citizen of the State of Maryland.  Terri Jacobsen is a stepchild of Betty Jacobsen.

6.      Defendant Edwin F. Jacobsen ("Ed Jacobsen") is an individual domiciled in Loudoun County, Virginia, and thus is a citizen of the Commonwealth of Virginia.  Ed Jacobsen is a stepchild of Betty Jacobsen.

7.      Defendant Elizabeth A. DeMarr ("Lisa DeMarr") is an individual domiciled in Falls Church, Virginia, and thus is a citizen of the Commonwealth of Virginia.  Lisa DeMarr is a stepchild of Betty Jacobsen.

8.      Defendant Carolyn J. Petsche ("Carolyn Petsche") is an individual domiciled in Fairfax County, Virginia, and thus is a citizen of the Commonwealth of Virginia. Carolyn Petsche is a stepchild of Betty Jacobsen.

9.      Defendant Paul I. Jacobsen ("Paul Jacobsen") is an individual domiciled in James City County, Virginia, and thus is a citizen of the Commonwealth of Virginia.  Paul Jacobsen is a stepchild of Betty Jacobsen.

10.     Defendant Diana L. Geremia ("Diana Geremia") is an individual domiciled in Loudoun County, Virginia, and thus is a citizen of the Commonwealth of Virginia.  Diana Geremia is a child of Betty Jacobsen.

11.     Defendant Ingrid I. Jacobsen ("Ingrid Jacobsen") is an individual domiciled in Montgomery County, Maryland, and thus is a citizen of the State of Maryland.  Ingrid Jacobsen is a child of Betty Jacobsen.

12.     Defendant Thomas P. Voith ("Thomas Voith") is an individual domiciled in Frederick County, Maryland, and thus is a citizen of the State of Maryland.  Thomas Voith is a child of Betty Jacobsen.

13.    Defendant Nancy E. Voith Rice ("Nancy Voith") is an individual domiciled in Osceola County, Florida, and thus is a citizen of the State of Florida. Nancy Voith is a child of Betty Jacobsen.

14.    Defendant Gary M. Voith ("Gary Voith") is an individual domiciled in Broward County, Florida, and thus is a citizen of the State of Florida. Gary Voith is a child of Betty Jacobsen.

15.    Defendant Elaine F. Winch ("Elaine Winch") is an individual domiciled in Montgomery County, Maryland, and thus is a citizen of the State of Maryland. Elaine Winch is a child of Betty Jacobsen.

## JURISDICTION AND VENUE

16.    The Court has subject matter jurisdiction under 28 U.S.C. § 1335 because the value of the money or property interests at stake exceeds $500, there is minimal diversity between adverse claimants, and Lakewood will deposit funds and give a bond for the value of the money or property interests at issue upon receiving the Court's permission to do so.

17.    The Court has personal jurisdiction over the Defendants under 28 U.S.C. § 2361.

18.    Venue is proper under 28 U.S.C. § 1397 because at least one of the claimants resides in this judicial district.

## FACTUAL BACKGROUND

19.    Lakewood is a real estate investment limited partnership that was formed in 1998 and made up of more than thirty (30) general and limited partners who were all members of an extended family.

20.    Ownership Interests in Lakewood are divided amongst five Family Groups, which were defined in Lakewood's Partnership Agreement as follows:

"Family Group" – a set of partners comprised of the following plus their children, their children's spouses, and their heirs: Jacob and Jane Jacobsen; James and Mary [G.] Jacobsen; the late Edwin [C.] and [Betty] Jacobsen; Karen Witowski; George and Evelyn Christopher.

21.     From its inception, Lakewood operated with one General Partner from each Family Group, with the individual General Partners each keeping their respective Family Group apprised of Partnership matters, and votes affecting a particular Family Group being held and controlled by the affected Family Group.

22.     Betty Jacobsen died on August 10, 2006.

23.     At the time of her death, Betty Jacobsen was a Limited Partner of Lakewood with an ownership interest of 10.6124% of the partnership (defined above as "Betty Jacobsen's Interest").

24.     Aside from herself, Betty Jacobsen's Family Group in Lakewood consisted of the Defendants, with Ed Jacobsen serving as the General Partner for the Family Group and the other Defendants being Limited Partners.

25.      Shortly after Betty Jacobsen's death, litigation over the disposition of the Estate of Betty Jacobsen (the "Estate") commenced in the Circuit Court for Osceola County, Florida (where Betty Jacobsen resided at the time of her death), involving Betty Jacobsen's children and stepchildren and her domestic partner (hereinafter the "Estate Litigation").

26.     On or about October 18, 2011, Lakewood elected to redeem Betty Jacobsen's Interest by involuntary transfer, under Section 8.02 of the Lakewood Partnership Agreement. Under Section 8.02(D), Lakewood opted to pay 25% of the value of Betty Jacobsen's Interest to her Estate on March 16, 2012 (the "March 2012 Payment"), with three additional payments, each also equaling 25% of the value of Betty Jacobsen's Interest, to be paid on March 16, 2013 (the

"March 2013 Payment"), March 16, 2014 (the "March 2014 Payment"), and March 16, 2015 (the "March 2015 Payment"). The March 2012 payment was for $125,000.00 based on a good faith estimated value of the transferred interest of $500,000.00.

27.    In connection with the involuntary transfer of Betty Jacobsen's Interest, the capital accounts of the Lakewood partners were adjusted across the board in 2012 reflecting the redemption of Betty Jacobsen's interest (all partners interests were increased by their respective pro rata shares of the 10.6124% previously held by Betty Jacobsen).

28.    On or about June 14, 2012, Lakewood obtained an independent appraisal of the transferred interest, which stated that the fair market value of the transferred interest as of December 31, 2011 was $360,000.00. Based on the independent appraisal valuation, Lakewood determined that the March 2012 payment amount was overpaid by $35,000.00, so it deducted that amount from the March 2013 Payment, and also deducted $12,291.25 (50% of the total fee for the independent appraisal). Thus, the March 2013 Payment by Lakewood was for $42,708.75.

29.    In or about August 2013, while an appeal of a decision of the Circuit Court for Osceola County in the Estate Litigation was pending in the District Court of Appeal for the State of Florida, Fifth District, the parties to the Estate Litigation entered into a Mediated Settlement Agreement, which was ultimately approved by the Circuit Court, and which resolved the Estate Litigation.

30.    Although Lakewood was not a party to the Estate Litigation, Lakewood was a party to the Mediated Settlement Agreement for the limited purpose of reaching an agreement with the parties interested in Betty Jacobsen's Estate regarding the involuntary transfer of Betty Jacobsen's Interest, which was a valuable asset of Betty Jacobsen's Estate.

31.    Pursuant to Paragraph 5 of the Mediated Settlement Agreement, Lakewood agreed to pay Betty Jacobsen's Estate a total of $416,708.75 for the redemption of Betty Jacobsen's Interest by involuntary transfer.  Given that Lakewood had already paid $167,708.75 to the Estate via the March 2012 Payment and the March 2013 Payment, Paragraph 5(a) of the Mediated Settlement Agreement provided the remaining balance of $249,000.00 was to be paid in equal installments of $124,500.00 each as the March 2014 Payment and the March 2015 Payment.  Under Paragraph 5(b) of the Mediated Settlement Agreement, those remaining payments were to be made directly to certain parties involved in the Estate Litigation, including payments of $76,000.00 to be distributed to "the Voiths"[1] and $48,500.00 to Terri Jacobsen, Ed Jacobsen, Lisa DeMarr, and Carolyn Petsche (the "Four Jacobsens") for the March 2014 Payment, and $124,500.00 to the Four Jacobsens as the March 2015 Payment.[2]

32.    According to the Four Jacobsens, they had a private oral agreement among themselves to purchase Betty Jacobsen's Interest back from Lakewood, and to split that ownership interest equally among them (i.e., each of them receiving a 2.6531% interest in Lakewood in addition to the interests they each owned prior to the involuntary transfer).  To effectuate this private agreement, Terri Jacobsen arranged with Lakewood's Managing Partner, George "Chris" Christopher (hereinafter "Chris Christopher"), to loan Lakewood the amount it would cost Lakewood to redeem Betty Jacobsen's Interest (including the $48,500.00 and $124,500.00 payments that were due to the Four Jacobsens as part of the redemption payments under ¶5(b) of

---

[1] The term "the Voiths" is defined in the Mediated Settlement Agreement as including Nancy Voith, Gary Voith, Elaine Winch, Stephen Voith, Thomas Voith, Ingrid Jacobsen, and Diana Geremia.

[2] Paragraph 5(b)(2) of the Mediated Settlement Agreement refers to March 16, 2014, instead of 2015, as the due date for the $124,500 payment to the Four Jacobsens, which is a typographical error.

the Mediated Settlement Agreement, which, according to Terri Jacobsen, "was a credit by the estate in favor of the partnership, based on the $173,000 that the estate agreed to reimburse us for legal fees incurred in the estate litigation").

33.     The loan payments on behalf of the Four Jacobsens to Lakewood were made purportedly by Terri Jacobsen and Lisa DeMarr, with Ed Jacobsen and Carolyn Petsche purportedly having agreed orally to pay Terri Jacobsen and Lisa DeMarr back for their respective one-quarter shares of the total amount paid.

34.     In 2017, Terri Jacobsen informed Chris Christopher that she and Lisa DeMarr had not been repaid (or repaid in full) by Ed Jacobsen and Carolyn Petsche after five years and asked that Mr. Christopher issue/allocate Betty Jacobsen's Interest entirely to her and Ms. DeMarr, solely as security until they had been repaid.  In accordance with Terri Jacobsen's instructions, Mr. Christopher adjusted the capital accounts of the partners such that one-half of Betty Jacobsen's Interest was issued to Terri Jacobsen and one-half to Lisa DeMarr, and this allocation remained in effect until 2022.

35.     In or about January 2022, Ed Jacobsen informed Mr. Christopher that all but a negligible amount of the money he owed to Terri Jacobsen and Lisa DeMarr had been repaid, and instructed Mr. Christopher to adjust the capital accounts to distribute Betty Jacobsen's Interest in four equal parts amongst the Four Jacobsens.  Ed Jacobsen informed Mr. Christopher that he would pay the balance of the amount he owed to Terri Jacobsen and Lisa DeMarr out of a forthcoming distribution to all partners in connection with Lakewood's sale of a warehouse property located in Alexandria, Virginia (the "Alexandria Warehouse").  Mr. Christopher adjusted the capital accounts of the Four Jacobsens accordingly.

36.    Following the distribution in connection with the sale of the Alexandria Warehouse, a dispute arose among the Four Jacobsens.  Terri Jacobsen, on behalf of herself and Lisa DeMarr, made written demands asserting, among other things, that the capital accounts never should have been adjusted according to Ed Jacobsen's instructions, that the distribution following the sale of the Alexandria Warehouse should have been made in accordance with the 2017-2021 percentages (i.e., with Terri Jacobsen and Lisa DeMarr each receiving half of Betty Jacobsen's Interest in that distribution), and that Ed Jacobsen and Carolyn Petsche should repay the portion of that distribution that each of them received as a result of the January 2022 adjustment to the capital accounts.

37.    Carolyn Petsche repaid all of the purportedly excess proceeds she received (i.e., $118,385.00) to Lakewood, which was distributed half to Terri Jacobsen and half to Lisa DeMarr.

38.    Ed Jacobsen repaid a portion of the purportedly excess proceeds he received (i.e., $30,000.00) to Lakewood, but he disputed the assertion that the capital accounts should have remained as they were in 2017-2021.  Ed Jacobsen asserted that the intent of the agreement between the Four Jacobsens was always for each of them to receive equal shares of Betty Jacobsen's Interest (which his sisters do not appear to dispute), and that he never agreed to the 2017 change in capital accounts that assigned equal shares of Betty Jacobsen's Interest only to Terri Jacobsen and Lisa DeMarr or, if he did agree, that change was to be temporary until Terri and Lisa were repaid.

39.    Ed Jacobsen further asserted that the first loan payment of $125,000.00 advanced to Lakewood, which was purportedly made by Lisa DeMarr in March 2012, was intended to be in large part on Ed Jacobsen's behalf in connection with the proceeds of the sale of a beach house that was sold near the time that the $125,000 loan was made. According to Ed Jacobsen, the beach

house had at one time been owned by the Four Jacobsens in equal shares before Terri Jacobsen sold her share to Ed Jacobsen in 2002.  Ed Jacobsen alleged that, based on him having purchased Terri Jacobsen's share, he had a 50% ownership interest in that beach house when it was sold, and that $125,000.00 from the proceeds of that sale were to be used for the $125,000.00 loan payment that Lisa DeMarr purportedly made to Lakewood in March 2012.  Ed Jacobsen further alleged that he had a discussion with Lisa DeMarr just after settlement on the sale of the beach house in which they discussed the intention for the $125,000.00 loan payment to Lakewood to be on behalf of Ed Jacobsen, Lisa DeMarr and Carolyn Petsche on account of the proceeds of the beach house sale.

40.    Based on the proceeds from the sale of that beach house, plus other monies that Ed Jacobsen alleged he paid (including money he repaid to Lakewood following the 2022 distribution), and his alleged forgiveness of separate debts one or more of his three sisters owed to him, Ed Jacobsen asserted that he has paid more than one-fourth the amount of money that Terri Jacobsen and Lisa DeMarr allegedly advanced as loans to Lakewood to purchase Betty Jacobsen's Interest.

41.    Terri Jacobsen, Lisa DeMarr, and Carolyn Petsche apparently disagree with Ed Jacobsen's accounting of the monies he claims to have paid in connection with the loans made to Lakewood for the purchase of Betty Jacobsen's Interest, and they disagree that he is entitled to his one-quarter share of Betty Jacobsen's Interest.  They have refused, however, to undertake an accounting.

42.    After the dispute among the Four Jacobsens arose, Lakewood began holding monies that could be attributable to Betty Jacobsen's Interest in an escrow account.  This includes the $30,000 that Ed Jacobsen repaid from the distribution made after the sale of the Alexandria Warehouse in January 2022, as well as 10.6124% of monthly partnership distributions (i.e., the

amount of those distributions constituting Betty Jacobsen's Interest) relating to net rents collected from leases on investment properties.  The 10.6124% share of each monthly distribution amounts to $1,591.86.  The total amount currently held in escrow is $49,102.32.

43.     Lakewood's four General Partners other than Ed Jacobsen engaged in efforts to resolve the dispute among the Four Jacobsens in order to determine the appropriate division of Betty Jacobsen's Interest, but the efforts to resolve the dispute involving the Four Jacobsens were unsuccessful, and Lakewood is thus currently subject to adverse claims by and among the Four Jacobsens.

44.     While they were assessing how to address the ongoing dispute among the Four Jacobsens, Lakewood's four other General Partners were contacted by Gary Voith, who had learned of the dispute among the Four Jacobsens.  Gary Voith asserted that the arrangement for the Four Jacobsens to purchase Betty Jacobsen's Interest was done without the knowledge of the other members of Betty Jacobsen's Family Group.

45.     Accordingly, Gary Voith asserted that he and the other members of Betty Jacobsen's Family Group should have been given the opportunity to purchase equal shares of Betty Jacobsen's Interest at the price at which Betty Jacobsen's Interest was purchased by the Four Jacobsens, and should be given that opportunity now.  Gary Voith further asserted that, in addition to other members of Betty Jacobsen's Family Group being given the opportunity to purchase their pro rata share of Betty Jacobsen's Interest, the monies constituting Betty Jacobsen's Interest in prior distributions that went to the Four Jacobsens should be recalculated with excess funds received by the Four Jacobsens being returned and redistributed to the other participating members of the Family Group.

46.    The conflicting claims of the Four Jacobsens, as well as the conflicting claims that have been made by Gary Voith and that may be made by other members of Betty Jacobsen's Family Group, arise out of private matters among Betty Jacobsen's children and stepchildren that are separate from Lakewood's business, and for which Lakewood does not have a sufficient basis to determine who has rightful claims to Betty Jacobsen's Interest.

**CLAIM FOR INTERPLEADER**
**(28 U.S.C. § 1335)**

47.    Lakewood incorporates by reference all of the preceding allegations of the Complaint as if fully restated herein.

48.    Lakewood disclaims any stake in the funds being held in escrow for past partnership distributions constituting Betty Jacobsen's Interest, or in any portion of any future partnership distributions constituting Betty Jacobsen's Interest, except to pay the same to the persons lawfully entitled.  Lakewood is desirous of making distributions constituting Betty Jacobsen's Interest, of the funds currently held in escrow as well as future distributions, to the persons lawfully entitled to receive them.

49.    By reason of the conflicting claims of the Defendants, Lakewood is in great doubt as to who is lawfully entitled to Betty Jacobsen's Interest, and under the circumstances is in danger of being exposed to multiple liabilities and litigation, and cannot safely pay the same to any of the Defendants without the aid of this Court.

50.    Subject to receiving the Court's permission to do so, Lakewood intends to pay into the registry of this Court the sum of $49,102.32, representing the amount currently held in escrow, to make additional payments into the Court's registry to account for future monthly distributions relating to the aforementioned collection of net rents from leases on investment properties, and to give a bond payable to the Clerk of the Court in the amount of $ $1,510,165.00 (or such other

13

amount as the Court may deem proper), with such surety as the Court may deem proper, to represent the value of Betty Jacobsen's Interest in the real estate investment assets currently held by Lakewood, to abide the judgment of the Court and to ensure compliance by Lakewood with the future order or judgment of the Court with respect to the subject matter of this case.

51.     By reason of the conflicting claims of the Defendants, Lakewood has been obliged to employ attorneys and pay costs to protect its rights and a reasonable sum should be ordered and paid from the deposited funds for the payment of its attorneys' fees and costs in connection with bringing this action.

WHEREFORE, Plaintiff, Lakewood Investment Group Limited Partnership, prays for relief as follows:

a.  That all Defendants be decreed to interplead and settle between themselves their rights and claims to Betty Jacobsen's Interest, including the right to receive distribution of the funds deposited with the registry of the Court and any future distributions backed by the aforementioned bond;

b.  That all Defendants be temporarily restrained by the Order of this Court from instituting or further prosecuting in any state or federal court any action against Plaintiff on account of any right growing out of Betty Jacobsen's Interest, and that this injunction may be perpetuated by the final decree;

c.  That Plaintiff be released from all further liability on account of Betty Jacobsen's Interest, upon a determination being had as to the sufficiency of Plaintiff's payments into the registry of the Court and giving of a bond, together accounting for Betty Jacobsen's Interest in past and future distributions.

d.  That Plaintiff be reimbursed its costs and reasonable attorneys' fees in connection

with this interpleader.

e.  That other relief may be awarded by this Court as to it seems fit.

Dated: March 29, 2023.                    _/s/ Glenn A. Gordon_____
                                          Glenn A. Gordon
                                          Federal Bar No. 13690
                                          Miles & Stockbridge P.C.
                                          100 Light Street
                                          Baltimore, Maryland 21202
                                          (410) 385-3491 (phone)
                                          (410) 385-3700 (fax)
                                          ggordon@milessstockbridge.com

                                          *Attorney for Plaintiff, Lakewood Investment*
                                          *Group Limited Partnership*