## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAKEWOOD INVESTMENT GROUP
LIMITED PARTNERSHIP,                          *

     Plaintiff,                                   *

     v.                                           *

MARY T. JACOBSEN, *et al.*,                   *

     Defendants.

                  Civil Action No. 8:23-cv-868-PX

                                  *

                                 ***

### MEMORANDUM OPINION

Pending in this interpleader action is Mary T. Jacobsen ("Terri"), Elizabeth DeMarr ("Elizabeth"), and Carolyn Petsche ("Carolyn") (collectively, the "Jacobsen parties")' motion to dismiss the counter and cross claims filed by Nancy E. Voith Rice ("Nancy"), Gary M. Voith ("Gary"), and Ingrid I. Jacobsen ("Ingrid") (collectively, the "Voith parties").[1]  ECF No. 67. Also pending are the Voith parties' motions to strike or exclude exhibits appended to the dismissal motion, ECF Nos. 81-2 & 95; a motion for denial or deferral of motion to dismiss/summary judgment, ECF No. 96; and a motion for leave to file surreply, ECF No. 97.

Separately pending is the interpleader plaintiff, Lakewood Investment Group Limited Partnership ("Lakewood" or "the Partnership")'s partial motion to dismiss the counterclaim filed by the Jacobsen parties, as well as its motion to strike certain allegations and an appended exhibit

---

[1] Because many individuals share the same last name, the Court will refer to each, when necessary, by his or her first name.  Cross-defendant, Edwin F. Jacobsen ("Edwin") is not a party to the motion to dismiss because he had not yet participated in the litigation at the time the motion was filed.  *See* ECF No. 67 at 1 n.1; ECF Nos. 66 & 71.  Edwin has since answered the crossclaim in which he asserts no affirmative defenses.  ECF No. 73.  Similarly, Lakewood is named as a counter-defendant but did not move specifically to dismiss the counterclaim.  *See* ECF No 59 ¶¶ 23–57; ECF No. 67.  That said, in Lakewood's answer, it asserts several defenses to include res judicata, and so the Court considers Lakewood to have joined in the Jacobsen parties' motion.  ECF No. 68 at 6–7.

to the Jacobsen's motion.  ECF No. 40.  In response, the Jacobsen parties move to amend their counterclaim against Lakewood.  ECF No. 98.

The issues are fully briefed, and no hearing is necessary.  *See* D. Md. Loc. R. 105.6.  For the following reasons, the Jacobsen parties' motion to dismiss is GRANTED; the Voith parties' motion to strike, renewed motion to strike, motion for denial or deferral of motion to dismiss/summary judgment, and motion for leave to file surreply are DENIED; the Jacobsen parties' motion for leave to file an amended counterclaim and crossclaim is GRANTED, and Lakewood's partial motion to dismiss and motion to strike are DENIED as MOOT.

## I.    Background

In 1998, Lakewood was formed as a real estate investment limited partnership comprised of more than 30 general and limited partners, all of whom belong to the same extended family.  ECF No. 1 ¶ 19.  The ownership interests in Lakewood are divided among five family groups.  *Id.* ¶ 20.  The Voith and Jacobsen parties are members of one such family group. ECF No. 59 ¶ 25.

Betty Jacobson ("Betty"), who died in 2006, was a member of the same family group as the Jacobsen and Voith parties.  ECF No. 1 ¶¶ 20, 22.  At the time of her death, Betty maintained a 10.6124% partnership interest in Lakewood ("Betty's interest").  *Id.* ¶ 23.  The Voith parties, by contrast, maintained a far smaller share: Ingrid had a 2.2326% interest, and Nancy and Gary each had a 0.9564% interest.  ECF No. 59 ¶ 26.  And as for the Jacobsen parties, Edwin had an 0.8802% interest, while Terri, Elizabeth, and Carolyn each had a 0.9002% interest.  *Id.*

On or around March 19, 2012, Lakewood notified Betty's estate that it had invoked a provision of the Lakewood Partnership Agreement (the "Partnership Agreement") that allowed the Partnership to absorb Betty's interest via "involuntary transfer."  ECF No. 94-11 at 2.

Lakewood, in turn, paid $125,000 to Betty's estate which represented roughly 25% of the estimated value of her interest at the time of transfer. *Id.*

A week later, Betty's daughter, Nancy, petitioned the Florida Probate Court located in the Ninth Judicial Circuit Court of Osceola County, Florida "to determine ownership, status and distribution of" Betty's interest in Lakewood under the Partnership Agreement, (hereinafter the "Florida Probate Court" and the "Florida Probate case"). *See* ECF No. 1 ¶ 13; ECF No. 94-13. Specifically, Nancy asked the Florida Probate Court to declare that under the terms of the Partnership Agreement, the predicate events necessary to trigger the involuntary transfer provision had not yet occurred. ECF No. 94-13. According to the publicly available court docket, after extensive litigation, the matter was eventually appealed to Florida's Fifth District Court of Appeal. *See* ECF Nos. 94-14, 94-15, 94-16 & 94-17.

While on appeal, the dispute about Lakewood's involuntary transfer settled. *See* ECF No. 94-6. The terms of settlement were memorialized in a written Mediated Settlement Agreement (the "MSA"). ECF No. 94-4. One of the MSA's express purposes was to "fully and finally resolve all aspects of the involuntary transfer of the Estate's interest in Lakewood to Lakewood." ECF No. 94-4 at 3. Lakewood agreed to pay Betty's estate a total of $416,708.75 for her partnership interests in full and fair resolution of whether Lakewood properly executed an involuntary transfer. *Id.* at 4; ECF No. 1 ¶ 31. On Nancy's motion, the Florida Probate Court approved the MSA on September 23, 2013. ECF Nos. 94-5 & 94-6.

During this same time, the Jacobsen parties – Terri, Lisa, Edwin, and Carolyn – agreed orally to purchase Betty's interest from Lakewood and distribute her interest equally among themselves. ECF No. 1 ¶ 32. Pursuant to their agreement, Terri and Lisa supplied the funds to

purchase Betty's interest, and Edwin and Carolyn agreed to reimburse Terri and Lisa for their respective shares. *Id.* ¶¶ 32–33.

However, some time in 2017, Terri and Lisa claimed that Edwin and Carolyn had still not paid them back for their shares of Betty's interest. ECF No. 1 ¶ 34. Accordingly, Terri and Lisa told Lakewood's managing partner, George E. Christopher ("Christopher"), that because Carolyn and Edwin had not fully satisfied payment to them, Christopher should redistribute Betty's interest solely between Terri and Lisa such that each of them maintained one-half of that interest. *Id.* Christopher followed their instructions. *Id.*

Several years later, in January of 2022, Edwin claimed to Christopher that he had almost fully paid back Terri and Lisa for his share of Betty's interest, and further claimed that he would pay the remainder out of the expected proceeds from the sale of a warehouse held by the Partnership. ECF No. 1 ¶ 35. He instructed Christopher to redistribute Betty's interest in four equal parts, and Christopher did so. *Id.*

After the warehouse sold and the partners received their distributions, Terri and Lisa disputed the reallocation of Betty's interest and demanded that Edwin and Carolyn remit the portion of the distribution that they had received due to the reallocation of the Partnership interests. ECF No. 1 ¶¶ 36–37. Carolyn complied fully but Edwin did not. *Id.* ¶ 38. Instead, Edwin claimed that the first payment to Lakewood of $125,000 was intended to be in large part on his behalf because it came from the proceeds from the sale of a beach house in which he had maintained a 50% ownership interest. *Id*. ¶ 39. Carolyn, Lisa, and Terri disagreed with Edwin's position. *Id.* ¶ 41. Because the Jacobsen parties continued to dispute the division of Betty's interest, Lakewood began holding in escrow any proceeds ascribed to Betty's interest. *Id.* ¶ 42. Meanwhile, the Voith parties, through Gary, informed Lakewood that the Jacobsen parties'

purchase of Betty's interest was effectuated without the Voith parties' knowledge or consent, and that the other members in the family group should have been given similar purchase opportunities. *Id.* ¶¶ 44–45.

With no resolution on the horizon, Lakewood initiated this interpleader action. *See* ECF No. 1. It seeks judicial declaration for the rightful ownership and distribution of Betty's interest. *Id.* ¶ 46. The Voith parties have filed a counterclaim against Lakewood and a crossclaim against the Jacobsen parties regarding the involuntary transfer of Betty's interest to Lakewood. ECF No. 59. In the counterclaim, the Voith parties essentially seek to invalidate the 2012 involuntary transfer. *Id.* ¶¶ 23–61. In the crossclaim, the Voith parties assert that the Jacobsen parties' "wrongful and illegal" acquisition of Betty's interest through involuntary transfer violated non-specific terms of the Partnership Agreement. *Id.* ¶ 60.

The Jacobsen parties moved to dismiss the counter and crossclaims. ECF No. 67. In response, the Voith parties moved to strike or exclude evidence on counterclaimants' motion to dismiss; for denial or deferral of motion to dismiss/summary judgment; and for leave to file surreply. ECF Nos. 81-2, 95, 96 & 97. Separately, the Jacobsen parties have filed a counterclaim against Lakewood in which they seek judicial dissolution of the Partnership and the appointment of a permanent liquidating receiver (Count One); an injunction prohibiting the Partnership sale of assets (Count Two); an accounting since January 2020 (Count Three); and a declaration that the warehouse sale was improper, resulting in a misallocation of assets, and thus requiring appointment of a third-party neutral to windup the Partnership (Count Four). ECF No. 19 ¶¶ 39, 98–133.

Now pending are the motions challenging many of the counter and cross claims. The Court turns first to the Jacobsen parties' motion to dismiss and the Voith parties' related motions.

II.    **Jacobsen Parties' Motion to Dismiss the Voith Parties' Counterclaim and Crossclaim**

Principally, the Jacobsen parties argue that res judicata precludes re-litigation of the involuntary transfer question concerning Betty's interest.  *See* ECF No. 67-1 at 10, 21–23.  For the reasons stated below, the Court agrees and will grant the motion on this ground.

A.    **Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555)).  The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief.  *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

B.    **Analysis**

The Jacobsen parties argue that the legal question central to the counter and cross claims – the involuntary transfer of Betty's interest to Lakewood in 2012 – has been fully and finally decided in the Florida Probate Court.  Thus, say the Jacobsen parties, the doctrine of res judicata precludes re-litigation of this claim.

Res judicata provides that "'a final judgment on the merits bars further claims by parties

6

or their privies based on the same cause of action.'"  *See Andrews v. Daw,* 201 F.3d 521, 524

(quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  When sitting in diversity, *see*

ECF No. 1 ¶ 16, the Court must "apply the res judicata rules of the state in which the prior

judgment was obtained."  *W. Maryland Wireless Connection v. Zini*, 601 F. Supp. 2d 634, 640

(D. Md. 2009); *see also Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 71 (1939) (noting that

statutory interpleader "is based upon the clause of Section Two, Article III, of the Constitution,

U.S.C.A., which extends the judicial power of the United States to controversies 'between

citizens of different States'").  Thus, the Court will apply Florida law.

But before reaching the merits of the res judicata question, the Court must consider the

Voith parties' motion to strike exhibits,[2] ECF No. 95, and motion for leave to file surreply, ECF

No. 97.  As for the motion to strike, the Voith parties ask the Court not to consider three

documents that were part of the Florida Probate Court record, namely: the MSA; Lakewood's

March 19, 2012, correspondence to Betty's estate confirming the involuntary transfer; and the

2017 Statement of Capital Accounts.  *See* ECF Nos. 95 & 95-1.

The Voith parties argue that because these documents are not properly authenticated,

Federal Rule of Civil Procedure 56(c)(2) compels exclusion.  *See* ECF No. 95-1 at 1–2.  Rule

56(c)(2) permits exclusion for lack of authenticity at the summary judgment stage.  *Id.* (a party

may "object that the material cited to support or dispute a fact cannot be presented in a form that

would be admissible in evidence.").  But this is not a summary judgment motion, and so the

request under this Rule is a misfit.

---

[2] The Voith parties initially moved to strike or exclude Exhibits B–K as inadmissible pursuant to Rule 56(c)(2) on
the ground that they had not been properly authenticated.  ECF Nos. 81-2 & 81-3.  After the Jacobsen parties re-filed
certified copies of exhibits B–J, and further introduced six additional certified court records as Exhibits L–Q, the
Voith parties renewed their motion to strike or exclude only as to Exhibits C, J, and K.  ECF Nos. 95 & 95-1.
Accordingly, the original motion to strike or exclude evidence at ECF No. 81-2 is denied as moot.

More to the point, the Court may take judicial notice of matters of public record at the motion to dismiss stage without treating the motion as one for summary judgment. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This approach is particularly well suited to questions of res judicata, where the Court often must determine which parties were involved in the prior proceedings and what grounds for relief were previously pursued. *See Andrews*, 201 F.3d at 524 n.1 ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). Because the documents indisputably were part of the Florida Probate Court proceedings which feature prominently in the Jacobsen parties' grounds for dismissal, *see* ECF No. 95-1 at 2, the motion to strike these documents is denied.

The Voith parties next move for leave to file a surreply concerning the motion to dismiss their counter and crossclaims. ECF No. 97. Although surreplies are generally disfavored, they "may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Voith parties assert that they have not had an opportunity to fully respond, by additional evidence or argument, because the Jacobsen parties had not submitted the authenticated exhibits until after the Voith parties filed their response. ECF No. 97-1 at 4. Even if true, the timing of the authenticated exhibits did not deprive the Voith parties of any opportunity to submit responsive arguments. In fact, the Voith parties *did* make substantive arguments assuming that the Court would consider the yet-to-be authenticated exhibits. *See* ECF No. 81 at 8; *see also Khoury*, 268 F. Supp. at 606 (declining to grant leave when "a surreply

would not provide the plaintiff with her first chance to address the issue).  The Voith parties, in short, have been fully heard.  The motion for leave to file a surreply is denied.

Turning to the heart of the Jacobsen parties' motion to dismiss, they contend that the doctrine of res judicata precludes the Voith parties' counter and cross claims.  ECF No. 67-1 at 10.  Specifically, the Jacobsen parties argue that the Florida Probate Court's approval of the MSA fully resolves the merits of the counter and cross claims.  As a threshold matter, the Court must first determine whether prior judicial approval of the MSA constitutes a final judgment on the merits.  Under Florida law, it does.  *See Arrieta-Gimenez v. Arrieta-Negron*, 551 So. 2d 1184, 1186 (Fla. 1989) ("While it is true . . . that a consent judgment is a judicially approved contract, and not a judgment entered after litigation, it is a judgment nonetheless.").

Next, the Court must determine whether the prior and current legal questions share "four identities:" (1) the thing being sued for; (2) the cause of action; (3) persons and parties to the action; and (4) the "quality of the persons for or against whom the claim is made."  *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004).  As to the first identity, the "thing being sued for," the Court looks to whether the substantive issues raised here have already been resolved in the Florida Probate case.  *See Claims Holding Grp., LLC v. AT&T Mobility, LLC*, 347 So. 3d 412, 414 (Fla. Dist. Ct. App. 2022); *see also Puff 'N Stuff of Winter Park, Inc. v. Fed. Tr. Bank, F.S.B.*, 945 F. Supp. 1523, 1529 (M.D. Fla. 1996), *aff'd sub nom. Puff 'N Stuff v. Fed. Tr. Bank*, 129 F.3d 616 (11th Cir. 1997).

The substantive issue in the Florida Probate case concerned whether the Partnership Agreement triggered an involuntary transfer of Betty's interest.  *See* ECF No. 94-13 ¶ 11 (asking the Florida court to find that no "'Involuntary Transfer' of the Estate's interest in Lakewood had occurred").  Similarly, here, the Voith parties' counter and crossclaims ask this Court to declare

that no involuntary transfer occurred and to determine the "respective rights" of the parties accordingly.  ECF No. 59 at 11–12, 14.  From this, the Court easily concludes that both cases share the same "thing being sued for."  *Topps*, 865 So. 2d at 1255.

The second element turns on whether "the facts or evidence necessary to maintain the suit are the same in both actions.'"  *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (emphasis omitted) (quoting *Albrecht v. State*, 444 So.2d 8, 12 (Fla.1984), *superseded by statute on other grounds, Bowen v. Fla. Dep't of Env't. Regul.,* 448 So.2d 566 (Fla. 2d DCA 1984)).  "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action," then "the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."  *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir. 1983)).

Again, both cases share the common question of whether the involuntary transfer was proper.  Just as the Florida Probate Court was asked to "rule[] on the merits of" this question, ECF No. 94-13 ¶ 19, so too is this Court in seeking a declaration that the Partnership Agreement did not authorize an involuntary transfer.  ECF No. 59 ¶¶ 37, 52, 60; *cf. U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76–77 (Fla. Dist. Ct. App. 2003) (no identity when causes of action were based on two different breaches of an agreement).  Thus, the second element is easily met.

Third, the identity of the parties is "broadly interpreted to include more than just record parties—so that, for example, a person in privity with a record party, as well as a person who controls for his own interest a record party, may invoke the doctrine of res judicata."  *West v. Kawasaki Motors Mfg. Corp., U.S.A.*, 595 So. 2d 92, 94 (Fla. Dist. Ct. App. 1992).  "Privity, in

10

turn, has been defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" *Fernandez v. Cruz*, 341 So. 3d 410, 414 (Fla. Dist. Ct. App. 2022) (quoting *Se. Fid. Ins. Co. v. Rice*, 515 So. 2d 240, 242 (Fla. Dist. Ct. App. 1987)).

In the Florida Probate case, Nancy brought the petition as "an Interested Person" of Betty's estate, against Lakewood and all of Betty's other children and stepchildren. The parties in the Florida Probate case accordingly included the parties in this case. *See* ECF No. 94-13 at 3; ECF No. 59 at 1–2. This is so regardless of procedural posture of each case. *See Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1371 (M.D. Fla. 2014), *aff'd sub nom. Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc.*, 626 F. App'x 935 (11th Cir. 2015). The Jacobsen parties have thus demonstrated a sufficient identity of parties.

Last, as to the quality of the persons and entities, the Court asks whether the parties were "sued in the same capacity vis-à-vis [the plaintiff] in each of the lawsuits." *Jenkins v. Lennar Corp.*, 972 So. 2d 1064, 1066 (Fla. Dist. Ct. App. 2008). In each lawsuit, the Jacobsen parties have been characterized as the beneficiaries of Betty's interest in Lakewood. ECF No. 94-13 ¶ 4; *see also* ECF No. 1 ¶ 2; ECF No. 59 ¶ 25–26. And in both suits, the question of which parties are the rightful beneficiaries of Betty's interest as a function of the involuntary transfer is front and center. Thus, the "identity of the quality of the persons" being sued in both matters is clear.

In sum, the Court is convinced that res judicata bars re-litigation regarding the involuntary transfer of Betty's interest to Lakewood. The counter and crossclaims, premised on this liability theory, are thus dismissed with prejudice because no amount of amendment could cure the preclusion of the claims. *Cf. Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008); *Hasan v. Friedman & MacFadyen, P.A.*, No. DKC 11-3539, 2012 WL 3012000, at

*8 (D. Md. July 20, 2012).  The Court need not reach the Jacobsen parties' alternate theories in favor of dismissal.

### III.    Lakewood's Partial Motion to Dismiss the Jacobsen Parties' Counterclaim & the Jacobsen Parties' Motion for Leave to Amend

The Court turns next to Lakewood's partial motion to dismiss the Jacobsen parties' counterclaim and its motion to strike various aspects of the same.  ECF No. 40.  The counterclaim alleges that the warehouse sale proceeded without advance notice to the Jacobsen parties' and without their consent; that the profits were wrongfully distributed; and that Lakewood's general partners distributed the net proceeds inconsistently with each partner's ownership interests.  ECF No. 19 ¶¶ 30, 34, 38–53, 55–58.  The Jacobsen parties further allege that a portion of Edwin's share, $175,104.75, should have been distributed to Terri and Elizabeth.  *Id.* ¶ 58.  They seek judicial dissolution of the Partnership and the appointment of a permanent liquidating receiver (Count One); a preliminary injunction prohibiting the Partnership's sale of assets (Count Two); an accounting since January 2020 (Count Three); and a declaratory judgment regarding the improper sale of the warehouse, the misallocation of assets, and the appointment of a third-party neutral to windup the Partnership (Count Four).  *Id.* ¶¶ 98–133.

Lakewood moves solely to dismiss Counts Two and Four of the counterclaim.  ECF No. 40.  Regarding Count Two, Lakewood contends that a "preliminary injunction" is not a proper cause of action, and, in any event, has been resolved by separate motion.   ECF No. 40-2 at 1, 4–5.  As to Count Four, Lakewood contends that the requested declaratory relief concerns Edwin specifically, not the Partnership, and that the count otherwise seeks relief duplicative of that sought elsewhere in the counterclaim.  *Id.* at 5–6.

Although the Jacobsen parties opposed the motion, ECF No. 49, they separately move for leave to file an amended counterclaim, ECF No. 98.  The proposed amended counterclaim strikes Counts Two and Four.  *See* ECF No. 98-2 at 70–74.  It also adds Christopher and Jeffrey C. Jacobsen as counter-defendants, and a crossclaim against Edwin.  The new claims are all related to the warehouse sale and the handling of the parties' respective interests in the Partnership. ECF No. 98-1 ¶¶ 1–84.  The proposed amended counterclaim also adds against the individually named defendants an array of common law counts to include fraud, conversion, intentional interference with contractual relations, breach of fiduciary duty, and four breaches of contract. *Id.* ¶¶ 85–165.  It lastly alleges wrongful dissolution against Lakewood and seeks declaratory relief as to the appointment of the liquidating receiver for the windup.  *Id.* ¶¶ 165–85.

Lakewood and the Voith parties oppose amendment.  They argue generally that amendment would prejudice them by "inject[ing] new issues" and complicating the interpleader action.[3]  ECF No. 99 at 3; *see also* ECF No. 100 at 3.  Amendment of pleadings should be liberally granted when justice requires.  *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011); *see* Fed. R. Civ. P. 15(a)(2).  "[A] request to amend should only be denied if . . . 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'"  *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)).  "Whether an amendment would be prejudicial is a factual determination."  *Equal Rts. Ctr. v. Archstone Smith Tr.*, 603 F. Supp. 2d 814, 818 (D. Md. 2009), *aff'd sub nom. Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602

---

[3] Lakewood also argues that allowing amendment would create a "procedural morass" because Carolyn, a party to the original counterclaim, is not a party to the proposed amended counterclaim.  ECF No. 99 at 4.  However, Carolyn has consented to the relief sought in the motion for leave to amend.  *See* ECF No. 103 at 1 n.1.

F.3d 597 (4th Cir. 2010).  Importantly, simply because a proposed claim is "complex" or may lengthen proceedings, this alone does not warrant denial of amendment.  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *cf. Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (denial of amendment may be warranted after discovery closes or shortly before trial).

Lakewood and the Voith parties' broad objections to "added complexity" do not override countervailing principles of permitting early amendment to insure full and fair resolution of related claims.  Indeed, this case is already complex.  But it is also just beginning.  Thus, the Court is unpersuaded that the proposed amended counterclaim and cross claim will visit any undue prejudice.

Moreover, because the proposed amended counterclaim strikes the counts which are the subject of Lakewood's motion to dismiss and adds the party whom Lakewood asserts should be joined, amendment is responsive to the dismissal motion.  It also renders Lakewood's motion to strike unnecessary.  *Compare* ECF No. 19, *with* ECF No. 98-2.  Thus, the Court denies as moot both Lakewood's motion to dismiss and its motion to strike.  *See Venable v. Pritzker*, No. GLR-13-1867, 2014 WL 2452705, at *5 (D. Md. May 30, 2014), *aff'd*, 610 F. App'x 341 (4th Cir. 2015).  The proposed amended counterclaim and crossclaim at ECF No. 98-1 is deemed filed pursuant to Local Rule 103.6(a).

### IV.   Conclusion

For the foregoing reasons, the Court GRANTS the Jacobsen parties' motion to dismiss. The Voith parties' motion to strike, renewed motion to strike, motion for denial or deferral of motion to dismiss/summary judgment, and motion for leave to file surreply are DENIED. Furthermore, the Jacobsen parties' motion for leave to file an amended counterclaim and crossclaim is GRANTED, and Lakewood's motion to dismiss and motion to strike are thereby

DENIED as MOOT.  A separate Order follows.


February 2, 2024
Date

/s/
Paula Xinis
United States District Judge