IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAKEWOOD INVESTMENT GROUP LIMITED PARTNERSHIP, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:23-cv-868-PX |
| MARY T. JACOBSEN, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is Counter-Plaintiffs/Cross-Plaintiffs Nancy E. Voith Rice ("Nancy"), Gary M. Voith ("Gary"), and Ingrid I. Jacobsen ("Ingrid") (collectively, the "Voith parties")'s motion to reconsider the Court's decision granting Cross-Defendants Mary T. Jacobsen ("Terri"), Elizabeth DeMarr ("Elizabeth"), and Carolyn Petsche ("Carolyn") (collectively, the "Jacobsen parties")'s motion to dismiss their counter and cross claims. ECF No. 108. The motion is fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the Voith parties' requested reconsideration is denied.

**I.     Background**

The Court has previously discussed the relevant factual background in its prior opinion, ECF No. 104, and so will highlight only those facts relevant to the pending reconsideration motion. Lakewood Investment Group Limited Partnership ("Lakewood") is a real estate investment limited partnership comprised of more than 30 general and limited partners who all belong to the same extended family. *Id.* at 2. Lakewood's ownership interests are divided among five family groups. *Id.*

In 2006, Betty Jacobsen, who had a 10.6124% partnership interest in Lakewood, passed away. ECF No. 104 at 2. Since her death, the Voith and Jacobsen parties, members of Betty's family group, have litigated the disposition of her interest. *Id.* On March 19, 2012, Lakewood notified Betty's estate that it would absorb her interest via "involuntary transfer." *Id.* at 2–3. Sometime thereafter, the Jacobsen parties purchased Betty's interest from Lakewood. *Id.* at 3–4.

After Lakewood completed the involuntary transfer, Betty's daughter, Nancy, petitioned the Florida Probate Court to determine the ownership status of Betty's interest under Lakewood's Partnership Agreement. ECF No. 104 at 3. While the matter was on appeal, the parties reached a settlement, the terms of which were memorialized in a Mediated Settlement Agreement ("MSA"). *Id.* One express purpose of the MSA was to "fully and finally resolve all aspects of the involuntary transfer of the Estate's interest in Lakewood to Lakewood." *Id.*

Fights over Betty's interest persisted. Lakewood filed this interpleader action, and the Voith parties counterclaimed against Lakewood and crossclaimed against the Jacobsen parties. The Voith parties contend that the 2012 involuntary transfer was invalid, and that the Jacobsen parties wrongfully acquired Betty's interest. ECF No. 59. The Court concluded that, in light of the judicially approved MSA, the Voith parties' counterclaim and crossclaim were barred by the doctrine of res judicata. *See* ECF Nos. 104 & 105. The Voith parties now ask the Court to reconsider that decision. ECF No. 108.

**II.     Analysis**

When, as here, a party moves for reconsideration within 28 days of the court's decision, the motion is subject to Federal Rule of Civil Procedure 59(e). *See* ECF Nos. 104 & 108. Under Rule 59(e), the Court may reconsider any final judgment "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available at trial; or (3)

to correct a clear error of law or prevent manifest injustice." *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003).

Although not explicitly stated, the Voith parties appear to style their motion as one "to correct a clear error of law." *See* ECF No. 108-1 at 4–9. Where the movants seek relief on this basis, they must demonstrate that the Court's previous decision was "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal citation and quotation marks omitted); *see also Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012) ("[T]he prior judgment cannot be just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." (internal citation and quotation marks omitted)). Indeed, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright, *et al.*, Fed. Prac. & Proc. § 2810.1, at 127–28 (2d ed. 1995)). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting Wright, *et al.*, *supra*, § 2810.1, at 124).

The Voith parties principally argue that "the specific terms of the MSA" demonstrate that their claims are not barred by res judicata. ECF No. 108-1 at 4–5. In support of this contention, they point to Paragraph 12(d) of the MSA. It reads, in pertinent part:

> The Parties acknowledge, accept, and waive any objection that the redeemed interest is, as of the date of redemption, the property of Lakewood and thereafter becomes fully subject to the term and conditions of the partnership agreement, as applicable to a redeemed partnership interest arising out of an involuntary transfer. Each Party further waives and releases any objection to Lakewood's further disposition of the redeemed interest, which disposition is governed by the partnership agreement.

ECF No 94-4 at 6–7.

According to the Voith parties, this language shows that both the involuntary transfer and

3

the disposition of the redeemed interest were controlled by the terms of the partnership agreement, evincing "the parties' contractual intent to reserve any future, possible claims based on the Partnership Agreement." ECF No. 108-1 at 8. Therefore, say the Voith parties, their claims are "only selectively barred by res judicata." ECF No. 108-1 at 8.

The Court disagrees. The entirety of paragraph 12 of the MSA makes clear the breadth of the waiver and release. It states that the parties release Lakewood from "*all* claims, demands, damages, actions, causes of action, or suits in law or in equity, *arising from* the involuntary transfer of the Estate's interest in Lakewood." ECF No. 94-4 at 6 (emphasis added). Paragraph 12 also includes four illustrative subsections of the types of claims covered by the waiver. These include claims related not only to Lakewood's redemption of Betty's interest, but also the "further disposition of the redeemed interest." ECF No. 94-4 at 6–7; *see Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So. 2d 827, 829 (Fla. Dist. Ct. App. 2004) ("When interpreting a contract, a court should give effect to the plain and ordinary meaning of its terms."); *Thompson v. C.H.B., Inc.*, 454 So.2d 55, 57 (Fla. 4th DCA 1984) ("A court should arrive at a contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties."). The judicial approval of the MSA, therefore, forecloses the Voith parties' counter and cross claims.[1]

### III. Conclusion

The Voith parties' motion for reconsideration fails because they have not demonstrated a clear error of law. Thus, the motion for reconsideration (ECF No. 108) is DENIED. A separate Order follows.

---

[1] Counsel for the Voith parties have sought clarification of the scope of the Court's February 2, 2024 decision. *See* ECF No. 107. To clarify, the Court's Memorandum Opinion and Order dismissed all the Voith parties' counter and cross claims with prejudice.

April 16, 2024                                                                          /s/
Date                                                                           Paula Xinis
                                                                               United States District Judge